**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **LIGHTHOUSE CONSULTING GROUP, LLC,** §<br>        *Plaintiff,* §<br> §<br>**v.** §<br> §<br>**BB&T CORPORATION,** §<br>        *Defendants.* §<br> § | | **CIVIL NO. 6-19-CV-00594-ADA** |
| **LIGHTHOUSE CONSULTING GROUP, LLC,** §<br>        *Plaintiff,* §<br> §<br>**v.** §<br> §<br>**TIAA, FBS HOLDINGS, INC.,** §<br>        *Defendants.* §<br> § | | **CIVIL NO. 6-19-CV-00605-ADA** |
| **LIGHTHOUSE CONSULTING GROUP, LLC,** §<br>        *Plaintiff,* §<br> §<br>**v.** §<br> §<br>**BOK FINANCIAL,** §<br>        *Defendants.* §<br>s | | **CIVIL NO. 6-19-CV-00608-ADA** |

## <u>ORDER</u>

Before the Court are: Defendants BB&T Corporation, TIAA, FBS Holdings, Inc., and BOK

Financial's Motions for Judgment on the Pleadings and the various responses and replies thereto.

The Court, having considered the Motions and the applicable law, finds that the Motions should

be **GRANTED**, as discussed below.

1

## I.  INTRODUCTION

These Motions concern several identical actions for patent infringement brought by Plaintiff in this district against various defendant banking institutions. Plaintiff claims infringement of United States Patent Nos. 7,950,698 and 8,590,940. The USPTO reissued the former as RE44,274. These patents concern a system for remote depositing negotiable financial instruments, such as personal checks. *See* Pl.'s Original Compl. at 3, *Lighthouse Consulting Grp., LLC v. USAA Capital Corp.*, No. 6:19-cv-00606-ADA (W.D. Tex. Oct. 14, 2019), ECF No. 12 ("Pl.'s Compl."). Plaintiff claims that the remote check deposit features available in Defendants' smartphone banking applications infringe independent claims 1 and 6 of the '940 patent and claims 1 and 9 of the '274 patent. *Id.* at 3–6. Plaintiff claims that Defendants' mobile applications literally infringe several elements of the claims; however, Plaintiff alleges that Defendants have infringed the claim element of a "carrier designed to permit a front and back image" of checks only under the doctrine of equivalents. *Id.* at 21.

Plaintiff has also filed several other identical actions against other banking institutions in the Eastern District of Texas. A claim construction hearing before Judge Payne is upcoming in the Eastern District cases, and Plaintiff has already submitted its claim construction brief. *See* Pl.'s Opening Claim Construction Br., *Lighthouse Consulting Grp., LLC, v. Bank of America, NA et al.*, No. 2:19-cv-00250-JRG-RSP (E.D. Tex. Mar. 24, 2020), ECF No. 91, ("Pl.'s Br."). Eastern District Defendants have also submitted their response brief. *See* Defs.' Resp. Claim Construction Br., *Bank of America, NA et al.*, No. 2:19-cv-00250-JRG-RSP, ECF No. 96 ("E.D. Defs.' Resp. Br."). Additionally, Plaintiff has also filed a brief in reply to the Eastern District Defendants. *See* Pl.'s Reply to Defs.' Resp. Claim Construction Br., *Bank of America, NA et al.*, No. 2:19-cv-00250-JRG-RSP, ECF No. 97 ("Pl.'s Reply Br.").

USAA Capital Corporation, one of the banks sued by Plaintiffs in this district in a separate action, filed a 12(b)(6) motion to dismiss Plaintiff's claims on December 6, 2019. *See* Def.'s Mot. to Dismiss, *USAA Capital Corp.*, No. 6:19-cv-00606-ADA, ECF No. 12 ("USAA's Mot."). Several of the other defendants sued by Plaintiff in this district, including Defendants in these cases, followed suit and filed motions to dismiss or motions for judgment on the pleadings that joined and adopted the arguments made in USAA's Motion. Plaintiff filed a response to USAA's Motion on December 16, 2019. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss, *USAA Capital Corp.*, No. 6:19-cv-00606, ECF No. 14 ("Pl.'s Resp to USAA"). Plaintiff has also filed a substantively similar response the other actions. Additionally, USAA filed a reply to Plaintiff's Response on December 23, 2019. *See* Def.'s Reply ISO its Mot. to Dismiss, *USAA Capital Corp.*, No. 6:19-cv-00606, ECF No. 15 ("USAA's Reply"). USAA has since settled with Plaintiff; however, the Court will address the arguments of USAA's Motion with respect to the remaining cases involving Plaintiff.

USAA argues that Plaintiff is barred by prosecution history estoppel from using the doctrine of equivalents to claim infringement of the "carrier" element of the patent claims. USAA's Mot. at 6–9. USAA further argues that "carrier" cannot be construed to include non-physical computer software and allowing Plaintiff to invoke the doctrine of equivalents with respect to the "carrier" element would vitiate other claim language and violate the all elements rule. *Id*. at 9–13.

For the reasons discussed below, the Court finds that amendment-based estoppel bars Plaintiff from invoking the doctrine of equivalents with respect to the '274 patent. Additionally, the Court finds that Plaintiff's claim of infringement of the '274 and '940 patents by equivalents violates the all elements rule. Accordingly, Plaintiff's infringement claims in this action with respect to these patents are **DISMISSED**.

## II.  LEGAL STANDARDS

Because motions to dismiss are not unique to patent law, they are evaluated under the applicable law of the regional circuit. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). Here, Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Rule 12(b)(6) allows a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The court evaluates whether a complaint states a cognizable claim and sufficient facts in light of Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 8 does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 346 (5th Cir. 2013) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

## III. ANALYSIS

The Court concludes that 1) the '274 Patent is barred by amendment-based estoppel, 2) argument-based estoppel does not apply to either patent, 3) the meaning of "carrier" includes only physical objects, and 4) Plaintiff cannot invoke the doctrine of equivalents for its infringement theory because it would vitiate claim language.

### A. Claims Under the '274 Patent Barred by Amendment-Based Estoppel

Defendants first argue that Plaintiff is barred from claiming infringement of either patent under the doctrine of equivalents due to prosecution history estoppel. USAA's Mot. at 6–9. Prosecution history estoppel can occur in two ways: "either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). A court may grant 12(b)(6) dismissals based on either form of estoppel. *See Amgen Inc. v. Coherus Biosciences, Inc.*, 931 F.3d 1154, 1160–61 (Fed. Cir. 2019). Concerning amendment-based prosecution history estoppel, the Supreme Court has recognized that a "patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). "An estoppel also may be found on the basis of arguments made during prosecution of the application to secure the allowance of claims. . . . Any argument-based estoppel affecting a limitation in one claim will also extend to all claims in which that limitation appears." *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002).

During the prosecution of the patent application for '247 patent, the examiner repeatedly rejected the Plaintiff's claims in view of the prior art. In response, the Plaintiff amended the '274

patent independent claim 40 (issued as claim 1) to require an identifier "on a front side and back side of the carrier." USAA's Mot., Ex. 1, '698 Patent File History, 2010-06-02 Office Action Response at 8. Defendants argue that under the *Festo* presumption, this narrowing amendment is a surrender of all equivalents that do not include an identifier on a front and back side of a "carrier." USAA's Mot. at 6–7.

Plaintiff does not contest that the *Festo* presumption applies here; however, Plaintiff claims that there is an applicable exception that allows infringement under the doctrine of equivalents: namely, that Defendants' mobile banking applications are "after-arising technology" that were unforeseeable by Plaintiffs at the time of application. Pl.'s Resp. to USAA at 4–5. Plaintiff also argues that unforeseeability is a question of fact that a jury must determine. *Id.* at 6.

First, Plaintiff's claim that unforeseeability is a question of fact is unsupported and incorrect. "Questions relating to the application and scope of prosecution history estoppel fall within the exclusive province of the court," and "determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are questions of law for the court, not a jury, to decide." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003). Additionally, the Federal Circuit has affirmed courts' 12(b)(6) dismissal of cases where prosecution history bars a plaintiff from succeeding under the doctrine of equivalents. *See, e.g.*, *Amgen Inc. v. Coherus Biosciences, Inc.*, 931 F.3d 1154 (Fed. Cir. 2019). Thus, it is well within the province of the Court to determine whether a software "carrier" was foreseeable to Plaintiff on a Rule 12 motion.

Second, it is the date of the amendment, not the application filing date, that defines the timeframe for determining the foreseeability of an equivalent. *See Festo*, 344 F.3d at 1365 n.2; *see also Smithkline Beecham Corp. v. Excel Pharmaceuticals, Inc.*, 356 F.3d 1357, 1365 (Fed. Cir.

2004). It is undisputed that Plaintiff amended the '274 patent independent claim 40 (issued as claim 1) to require an identifier "on a front side and back side of the carrier" in June 2010. USAA's Mot., Ex. 1 ('698 patent File History, 2010-06-02 Office Action Response) at 8. Thus, for an equivalent technology to be "after-arising," it must have been invented after June 2010. However, Plaintiff's own complaint admits that the alleged equivalent (mobile apps for remote deposits) was introduced in the accused product prior to 2010. Pl.'s Compl. ¶ 34, ECF No. 1; *see also id.* at ¶ 22 (describing the use of mobile apps for remote deposits). Plaintiff also includes a timeline showing that the technology that its infringement claims target was available long before the amendment. *Id.* at ¶ 26. Therefore, based only on Plaintiff's own admissions, mobile apps for remote deposits were available before Plaintiff amended the claims and thus cannot be an "after-arising technology."

Because Plaintiff's Complaint admits that the accused software product was available prior to the filing of the '274 patent amendment, the accused software products cannot be unforeseeable "after-arising technology." Thus, even viewing the facts in a light most favorable to Plaintiff, Plaintiff is estopped from claiming software as an equivalent of the "carrier" element of the '274 patent. Accordingly, Plaintiff's claims for infringement of the '274 patent are **DISMISSED**.

Defendants suggest that the '940 patent claims should also be barred by amendment-based estoppel. *See* Def.'s Mot. for J. on the Pleadings at 3, *Lighthouse Consulting Grp., LLC, v. BB&T Corp.*, No. 6:19-cv-00594-ADA (W.D. Tex. Jun. 25, 2020), ECF No. 40. However, the Court is reluctant to dismiss the '940 patent based on amendment-based estoppel for at least two reasons: 1) based on the Court's review of the Plaintiff's complaint and given these cases are at an early stage of litigation, it is unclear that Plaintiff could not allege that Defendants' mobile deposition applications cannot receive a plurality of negotiable instruments; and 2) the Court allows parties

to freely amend their infringement theories as long as there is good cause—but especially as a result of a Court's claim construction determination—up to eight weeks after the Markman hearing. *See* Order Governing Proceedings at 6, *BB&T Corp.*, No. 6:19-cv-00594-ADA, ECF No. 17. As a result, because the Court believes it may be premature to dismiss the '940 patent based on amendment-based estoppel and because the Court does not need to do so given its analysis below, the Court declines to dismiss the '940 patent based on amendment-based estoppel.[1]

### B. Argument-Based Estoppel Does Not Apply to the Claims Under Either Patent

Defendants also assert that Plaintiff's patent claims should be dismissed on grounds of argument-based estoppel because arguments made by Plaintiff to the USPTO during patent prosecution surrendered certain subject matter applicable to this case. The Court is unconvinced by Defendants' arguments concerning argument-based estoppel. "To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter." *Deering Precision Instruments, LLC v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003). The arguments made by Plaintiff during patent prosecution do not meet this standard. In any case, because the Court finds above that Plaintiff's claims under both patents should be dismissed on other grounds, the Court declines to discuss the issue of argument-based estoppel any further at this time.

### C. Claim Construction of the '940 Patent

Defendants argue that holding their mobile banking applications as equivalent to the "carrier" element would vitiate other elements of the claim language. Def.'s Mot. at 9. Plaintiff

---

[1] Defendants similarly argue that Plaintiff should be estopped from applying the doctrine of equivalents to the '940 patent claims because the '940 patent contains the same claim language that was added by amendment to the '274 patent. Supplemental Br. in Supp. of Defs.' Mot. for J. on the Pleadings at 3, *BB&T Corp.*, No. 6:19-cv-00594-ADA, ECF No. 47. However, the Court also declines to further address this argument because it is outside the scope of the issues on which the Court requested briefings, and because the Court finds that Plaintiff's claims based on the '940 patent should be dismissed on other grounds.

disputes Defendants' construction of the claim language and argues that the Court may not reach the claim vitiation issue on a motion to dismiss prior to a claim construction hearing. Pl.'s Resp. to USAA at 11.  Defendants argue that the construction of the "carrier" element of the '940 patent can include only physical or tangible objects and cannot refer to computer software. Def.'s Mot. at 9.

The Court does not find it to be absolutely necessary to construe the "carrier" element in order to reach the claim vitiation issue. Out of an abundance of caution, the Court will construe the meaning of "carrier" to the extent appropriate to more completely address the claim vitiation issue.  The Court notes, however, that it does not need to hold a claim construction hearing in order to construe a claim term. *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("*Markman* does not require a district court to follow any particular procedure in conducting claim construction, . . . [d]istrict courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol."). Rather, the Court may construe the claims based on the paper record alone. *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. 398CV2996D, 2002 WL 1751381 at *11 n.6 (N.D. Tex. Apr. 4, 2002). In particular, when the technology is accessible to the court and the claims are relatively straightforward, a court may also deem a *Markman* hearing to be unnecessary. *See Lottotron, Inc. v. GTech Corp.*, No. 05-4562, 2007 WL 3349760 (D. N.J. Nov. 7, 2007) (holding a *Markman* hearing was not necessary because claims were not extremely technical); *Cumberland Pharm. Inc. v. Sagent Agila LLC*, No. 12–825–

LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013) (finding no claim construction hearing was required and dismissing the complaint on the basis of claim vitiation).[2]

The Court also has the discretion to grant a motion to dismiss after construing a claim term. *Id.* More specifically, "[i]f the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties." *Id.*

Claim construction is a matter of law, and the court construes claims as they would be understood by persons of ordinary skill in the field of the invention. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996). The court starts with the claim itself, read in light of the specification. *See Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed.Cir.1999). Using these tools, the court construes only the claims that are in controversy, and only to the extent necessary to resolve the dispute. *Id.* at 803.

In addition to the claim language, the prosecution history is "often helpful in understanding the intended meaning as well as the scope of technical terms." *Vivid Techs.*, 200 F.3d at 804. The prosecution history includes the record of interference proceedings. S*ee Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 872 (Fed.Cir.1998). In particular, the prosecution history is relevant in determining whether the patentee intends the language of the patent to be understood in its ordinary meaning.

Although a court should generally give the terms of a patent their ordinary meaning, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent

---

[2] Courts may even allow limited claim construction argument or briefing tailored to address the key issues. *See, e.g., Iris Connex, LLC v. Acer Am. Corp.*, No. 2:15-CV-1909-JRG, 2016 WL 4596043, at *4 (E.D. Tex. Sept. 2, 2016) (making use of a "mini-*Markman*" to construe dispositive claim elements).

specification or file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). When this intrinsic evidence unambiguously describes the scope of a patented invention, reliance on extrinsic evidence is improper. *See id.* at 1583. Extrinsic evidence, including expert testimony, "is not to be relied upon for purposes of claim construction, other than to aid the judge in understanding the technology[.]" *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 892 (Fed.Cir.1998). In the present case, where the technology involved is uncomplicated, and the claims are unambiguous, expert testimony is not needed.

Defendants' Motion to Dismiss concerns two claims of the '940 patent. Claim 1 is an independent claim and states, in part:

> A system for remote depositing of a plurality of negotiable instruments comprising:
>
> a carrier for receiving the plurality of negotiable instruments, the carrier having an identifier on a front and back side of the carrier, the identifier being independent of data on the negotiable instruments and unique to the carrier, and the carrier being designed to permit one front image of all the negotiable instruments, and one back image of all the negotiable instruments to be generated;
>
> an imaging device for separately generating and transmitting one electronic front image of all the negotiable instruments and one electronic back image of all the negotiable instruments and the unique identifier, while the negotiable instruments are secured to the carrier;

Pl's. Compl., Ex. A, '940 Patent at 15:27–40.

Claim 6 is an independent claim and states, in part:

> A system for remote depositing of a plurality of negotiable instruments comprising:
>
> a carrier for receiving the plurality of negotiable instruments and designed to permit one front image of all the negotiable instruments and one back image of all the negotiable instruments, when the negotiable instruments are secured to the carrier, to be generated, the carrier having an identifier independent of

11

data on the negotiable instruments and unique to the carrier, and a surface
area for providing deposit information;

*Id.* at 16:12–22.

Defendants interpret the '940 patent claim to require that the term "carrier" refers only to a physical or tangible object. USAA's Mot. at 11. Defendants also identify several elements of the claim that would be vitiated if "carrier" was found to be equivalent to non-physical objects such as software: namely the elements in both claim stating that "negotiable instruments are *secured to the carrier*," the elements in both claims specifying " a carrier having an identifier on a *front and back side* of the carrier," and the element in Claim 6 referring to the "*surface area*" of the "carrier." *Id.* (emphasis added). In response, Plaintiff disputes Defendants' construction of the "carrier" and "secured to the carrier" elements. Pl.'s Resp. to USAA at 11.

The controversy over these claims primarily concerns the "carrier" element, specifically whether the "carrier" element must be a physical or tangible object. Thus, it is not necessary to fully construe the meaning of "carrier." Rather, the Court will only construe the "carrier" element to the extent required to determine if a "carrier" must be a physical or tangible object.[3] To ensure consistency with other pending cases, the Court will primarily rely on the claim constructions briefs submitted to the Eastern District for its construction ruling. However, the Court will leave construction of the remaining disputed elements of this claim (and the full construction of "carrier") in the capable hands of Judge Payne and will defer to his findings.

---

[3] During a hearing on July 21, 2020, Plaintiff requested the Court construe the elements "carrier," "plurality of negotiable instruments," "secured to the carrier," and "unique identifier on the front and back of the carrier" from the claim language. *See* Mot. Hr'g Tr. at 28:14–30:7, *BB&T Corp.*, No. 6:19-cv-00594-ADA, ECF No. 46. The Court finds it unnecessary to construe the "plurality of negotiable instruments" element as it does not substantially impact the parties' arguments. Additionally, as described below, because the Court finds that "carrier" must be physical, "secured to carrier" must necessarily also refer to physically securing a physical object to the carrier. Because Plaintiff's proposed construction the "unique identifier on the front and back of the carrier" element is nearly identical to the claim language ("a unique identifier associated with the front side and back side of the carrier"), the Court will give that element its plain and ordinary meaning. Pl.'s Br. at 26.

In their claim construction briefs Eastern District Defendants first argue that the patent claims themselves necessarily imply that the "carrier" is a physical component. E.D. Defs.' Resp. Br. at 6–7. For example, the "identifier on the front and back side of the carrier" language necessarily implies that the "carrier" must be a physical component since it must have both a front and back side. *Id.* Additionally, the requirement in both claims that a "negotiable instrument" (*e.g.*, a check) be "secured to the carrier" also necessitates that the "carrier" be a physical component. *Id.* Similarly, the requirement in Claim 6 that the "carrier" have "a surface area for providing deposit information" also indicates a physical component, since computer software cannot be said to have a "surface area." *Id.* The dependent claims of the patent also reinforce that the "carrier" must be a physical component. *Id.* For example, dependent claims 2, 3, 7, and 8 of the '940 patent recite the "carrier" having a specific configuration, such as "a transparent carrier with an inserted negotiable instrument," "a seal to retain the negotiable instrument therewith," or a "transparent non-sealing carrier having pockets," none of which can be reconciled with the "carrier" being anything other than a tangible sheet. '940 Patent at 15:60–16:3, 16:47–57.

Second, Defendants argue the patent specification further confirms the "carrier" is a physical sheet. *Id.* at 7–8. For example, "the carrier may be a normal sheet of paper with a sequence number, bar code, test pattern, places to adhere the deposit ticket and check, and a place for the endorsement." '940 Patent at 9:58-61; *see also id.* at 3:50-51 ("Checks and deposit ticket are inserted into or attached to a carrier"). "Carriers" are described in the specification as "commercially available" and may include "stickers/labels" "commercially available [from the] Avery Dennison Corporation." *Id.* at 4:47-53; 7:34-44. The common specification gives no indication that the "carrier" is anything other than a physical sheet. E.D. Defs.' Resp. Br. at 7–8.

.       Finally, Defendants argue that prosecution histories further confirm that the "carrier" is a physical sheet. *Id.* at 8–9. For example, during prosecution of the application that matured into the '940 patent, the examiner mapped the "carrier" to physical sheets in the prior art, while discussing the "front and back side language." *See* USAA's Mot., Ex. 2, 2012-8-17 Examiner's Final Rejection at 5 ("the carrier is made from a material that avoid interference with transmission . . ., but do not explicitly disclose that the identifier is present on both sides"). The Plaintiff, in response, described the "carrier" as something tangible: "[i]n particular, after the negotiable instruments are inserted or attached to the carrier . . ., the carrier is placed into a fax machine, for scanning both the front and backside." *Id.,* 2013-2-14 Office Action Response at 8.

In response, Plaintiff states repeatedly that that the claims and specification do not actually use the word "physical" to describe the "carrier" element. Pl.'s Br. at 21; Pl.'s Reply Br. at 9–10. Plaintiff makes no attempt explain how claim limitations such as "front and back side," "secured to," or "surface area" could apply to a non-physical carrier. Plaintiff does object that Defendants' specification argument does not show a sufficiently "clear disavowal" of scope. Pl.'s Reply Br. at 10. However, Defendants' specification argument is secondary to Defendants' argument based on the claim language, which again, Plaintiff does not address with any specificity.

Based on the claim language, the Court concludes that "carrier" can only be a physical object, even after giving Plaintiff's arguments every benefit of the doubt.  A POSITA would understand that, based on the plain-and-ordinary meaning of claim language such as "front," "back," "side," and "surface area," the carrier can only be a physical object.  A POSITA would further understand that software or data created by software does not have a "front" or "back." At best, a POSITA might understand that software or data has only a "front," but no "back."[4]  Similarly,

---

[4] By extension, having two pieces of data does not somehow create a "front" and a "back"; rather, two pieces of data merely have two "fronts."

a POSITA would understand that software or data does not have a "side" as the plain-and-ordinary meaning of "side" can only refer to a tangible object. Finally, a POSITA would certainly not understand that software or data has a "surface area."

Specific claim terms from the dependent claims reinforce the Court's conclusion that "carrier' is a tangible object. For example, a POSITA would understand that because a carrier could be "transparent," the carrier must be a tangible object. Similarly, a POSITA would understand that claim language requiring that the carrier have a "seal" or "having pockets" make very little, if any, sense outside of a tangible object.

Furthermore, the specification and prosecution history are consistent with the physical construction required by the claim language. Although the specification and prosecution history alone do not constitute a sufficiently clear disavowal to necessitate a physical construction, given that the claim language clearly indicates a physical "carrier," it is notable that there is no language whatsoever in the specification or the prosecution history that suggests any possible embodiments that do not include a physical carrier.

The plain-and-ordinary meaning of the claim elements requires that the "carrier" must be a physical object, and there is nothing in either the patent specification or the prosecution history that suggests otherwise. In fact, the specification and prosecution history only serve to reinforce the requirement of a physical "carrier." Accordingly, because the claim language, specifications, and prosecution history all imply that the carrier is a physical object, the Court construes the term "carrier" to include only physical objects.

**D. "Carrier" Under the '940 Patent Cannot be Equivalent to a Mobile Banking Application**

Defendants argue that their mobile banking applications cannot be construed as equivalents to the "carrier" element of Plaintiff's patent claim because that would vitiate other elements of the

claim language that imply that the "carrier" must be a physical object. USAA's Mot. at 9. Plaintiff argues that, even if the meaning of "carrier" is construed to literally encompass only physical objects, a non-physical component such as software may still infringe the "carrier" as an equivalent. Joint Claim Construction and Prehearing Statement at 9, *Bank of America, NA et al.*, No. 2:19-cv-00250-JRG-RSP, ECF No. 87, Ex. A. Plaintiff also argues that claim vitiation does not occur where the necessity of certain claim elements is "obfuscated" by after-arising technology with substantially the same function, way, and result. *See* Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings at 4–5, *Lighthouse Consulting Grp., LLC, v. BOK Financial*, No. 6:19-cv-00608-ADA (W.D. Tex. Mar. 16, 2020), ECF No. 24.

The doctrine of claim vitiation is closely related to the all elements rule. *See, e.g., Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006). The all elements rule limits the doctrine of equivalents and ensures "that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). Under the all elements rule "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* Additionally, "if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court." *Id.* at 39 n.8. However, claim vitiation should not "swallow the doctrine of equivalents entirely." *Depuy Spine*, 469 F.3d at 1018. Thus, the doctrine of equivalents is not always foreclosed "whenever a claim limitation does not literally read on an element of an accused device." *Id.* Rather, claim vitiation occurs when "the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim." *Id.* at 1018–19. "[T]o determine whether finding infringement under the doctrine of equivalents

would vitiate a claim limitation, courts consider the totality of the circumstances, evaluating whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *PSN Illinois, LLC v. Ivoclar Vivadent, Inc*., 525 F. 3d 1159, 1168 (Fed. Cir. 2008) (internal quotations omitted).

Plaintiff argues that claim vitiation should not apply in this case because some claim limitations, such as "identifier on a front and back side of the carrier," are "obfuscated" by the application of the doctrine of equivalents to an accused instrumentality which is an after-arising technology. Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings at 4–5, *BOK Financial*, No. 6:19-cv-00608-ADA, ECF No. 24. Plaintiff cites *Hughes Aircraft Co. v. United States* in support of this assertion. 717 F.2d 1351, 1365 (Fed. Cir. 1983). This argument, however, misstates the holding in that case. In *Hughes Aircraft*, the Federal Circuit found that the United States had infringed a patent for a satellite control system. *Id.* The patent described a system of various sensors which could determine detailed information about a satellite's position and spin relative to the sun, send that information to operators on the ground, and then receive commands from operators on the ground to precisely fire jets to adjust the satellite's position or spin. *Id.* at 1365. The United States deployed a satellite with a similar control system; this satellite, however, employed an onboard computer system to store and process the position and spin information and did not send detailed position and spin information to the ground for processing. *Id.* The court found that the United States' satellite still sent some information to the ground that accomplished substantially the same function, in substantially the same way, to accomplish substantially the same result as that of the patented system. *Id.* at 1365. The *Hughes* court did not find that after-arising technology obviated any claim limitations. Rather, the court found only that a certain piece of after-arising technology was equivalent to the claim limitation at issue. *Id.* The court also did not conclude that any level

of claim vitiation was acceptable; in fact, the issue of claim vitiation was not addressed at any point in that case. *See id.* generally.

Based on the principle of claim vitiation, the Court finds that the accused software application cannot be equivalent to the "carrier" element. More specifically, because "carrier" can only be a physical object, the Court concludes that allowing the equivalent alleged by Plaintiff would render several limitations (*e.g.*, "secured," "front," "back," "side," "surface area," "seal," "transparent," and "pockets")—which only make sense with a physical carrier—to be meaningless. In fact, Plaintiff's alleged equivalent is not "an insubstantial change from the claimed subject matter," but rather obviates the meaning of all of these limitations. It is of particular concern to the Court that Plaintiff's alleged equivalent vitiates the "front and back side" requirement, which Plaintiff specifically added to traverse a rejection. USAA's Mot., Ex. 1, '698 Patent File History, 2010-06-02 Office Action Response at 8. Furthermore, the Court finds that no jury could reasonably find that software could be equivalent to a physical "carrier" with a "surface area," "front and back side," *etc.* Thus, the all elements rule bars Plaintiff from claiming software as an equivalent of the "carrier" element of the '940 patent. Accordingly, Plaintiff's claims for infringement of the '940 patent are **DISMISSED**.

## IV. CONCLUSION

Accordingly, it is **ORDERED** Defendants BB&T Corporation, TIAA, FBS Holdings, Inc., and BOK Financial's Motions for Judgment on the Pleadings are **GRANTED**.

**SIGNED** this 3rd day of August, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE